ACCEPTED
03-14-00595-CR
3806486
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 5:05:36 PM
JEFFREY D. KYLE
CLERK

SEE AMEND BRF
FLD ON 3/23/15

# CASE NUMBER **03-14-00595-CR**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 5:05:36 PM
JEFFREY D. KYLE
Clerk

**ANDREW GARRAWAY**

Appellant

VS.                                    COURT OF APPEALS

**THE STATE OF TEXAS**        **THIRD DISTRICT OF TEXAS**

AUSTIN, TEXAS

**On appeal from the 274th Judicial District Court**

Hays County, Texas

Cause Number CR-11-0925

# APPELLANT'S BRIEF

**Oral argument is not requested**

unless requested by the State or this Court

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.        Austin, Texas 78701
*ph* (512) 921-8247    *fax* (512) 451-5842
*email* ellic@sahuallalaw.com

# IDENTITY OF PARTIES & COUNSEL

## Trial Parties

**THE STATE OF TEXAS**

**MR. ANDREW GARRAWAY**
Defendant

## Trial Counsel

**MR. BENJAMIN MOORE**
Counsel for the State
State Bar Number 24042522

712 S. Stagecoach Trail, Ste. 2057
San Marcos, Texas 78666
*ph* (512) 393-7600    *fax* (512) 393-7619
*email* benjamin.moore@co.hays.tx.us

**MR. DAVID WATTS**
Counsel for Defendant
State Bar Number 20978750

174 S. Guadalupe St., Ste. 101
San Marcos, Texas 78666
*ph* (512) 395-8538    *fax* (512) 393-8539
*email* wattslaw@centurytel.net

## Appellate Parties

**MR. ANDREW GARRAWAY**
Appellant

**THE STATE OF TEXAS**

## Appellate Counsel

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.          Austin, Texas 78701
*ph* (512) 921-8247    *fax* (512) 451-5882
*email* ellic@sahuallalaw.com

**THE HONORABLE WES MAU**
Counsel for the State
State Bar Number 00784539

712 S. Stagecoach Trail, Ste. 2057
San Marcos, Texas 78666
*ph* (512) 393-7600    *fax* (512) 393-7619
*email* wes.mau@co.hays.tx.us

# TABLE OF CONTENTS

**Index of Authorities** ........................................................ 1

    Cases ........................................................ 1

    Statutes ........................................................ 3

**Statement of the Case** ........................................................ 4

**Statement Regarding Oral Argument** ........................................................ 5

**Issues Presented** ........................................................ 6

**Statement of Facts** ........................................................ 8

**Summary of the Argument** ........................................................ 20

**Argument** ........................................................ 22

    Issue One—Theft as a Lesser-included Offense ........................................................ 22

    Issue Two—Elements in the Theft Charge ........................................................ 25

    Issue Three— LeadsOnline Exhibits ........................................................ 29

    Issue Four—Kajileh's Effective Consent Testimony ........................................................ 35

    Issue Five—Jarman's Ownership Testimony ........................................................ 38

    Issue Six— Legal-sufficiency of the Evidence ........................................................ 40

**Prayer** ........................................................ 45

**Certificate of Compliance** ........................................................ 46

**Certificate of Service** ........................................................ 47

# INDEX OF AUTHORITIES

## Cases

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) ............................... 24, 27

*Beasley v. State*, 426 S.W.3d 140 (Tex. App.—Houston [14th Dist.] 2012, no pet.)......... 24

*Benavidez v. State*, 323 S.W.3d 179 (Tex. Crim. App. 2010).............................. 25, 28

*Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012) ......................................... 44

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ......................34, 37, 39, 40

*Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011)................................27, 41, 42

*Cole v. State*, 839 S.W.2d 798 (Tex. Crim. App. 1990) ........................................... 30

*Coronado v. State*, 351 S.W.3d 315 (Tex. Crim. App. 2011) ..................30, 31, 36, 39

*Davis v. State*, 699 S.W.2d 955 (Tex. App.—Fort Worth 1985, no writ).............. 30

*Dean v. State*, 938 S.W.2d 764 (Tex. App.—Houston [14th Dist.] 1997, no writ) .......... 23

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1995) ...................................... 25

*Evans v. State*, 606 S.W.2d 880 (Tex. Crim. App. [Panel Op.] 1980)............... 26, 27

*Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007)...................................... 22, 23

*Hill v. State*, 625 S.W.2d 803 (Tex. App.—Houston [14th Dist.] 1981, no writ)...... 26, 27

*Holz v. State*, 320 S.W.3d 344 (Tex. Crim. App. 2010)........................................... 43

*Jackson v. Virginia*, 443 U.S. 307 (1979)................................................................. 40

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998) .....................34, 35, 37, 40

*Kent v. State*, No. 14-13-00375-CR (Tex. App.—Houston [14th Dist.], Aug. 28, 2014, no pet).. 27, 28

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)......................................... 41

*Mann v. State*, 964 S.W.2d 639 (Tex. Crim. App. 1998) ............................24, 25, 27

*Martinez v. State,* 327 S.W.3d 727 (Tex. Crim. App. 2010)....................33, 34, 37, 39

*Michigan v. Bryant*, 131 S. Ct. 1143 (2011) ...............................................30, 31, 36, 39

*Middleton v. State*, 187 S.W.3d 134 (Tex. App.—Texarkana 2005, no pet.) .......... 23

*Milton v. State*, 652 S.W.2d 958 (Tex. Crim. App. 1983) ................................. 26, 27

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) ................................ 31

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002) ........................34, 37, 39, 40

*Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005) .............................................. 28

*Peoples v. State*, 566 S.W.2d 640 (Tex. Crim. App. [Panel Op.] 1978) ................... 23

*Pointer v. Texas*, 380 U.S. 400 (1965) ...............................................30, 36, 39

*Powell v. State*, 189 S.W.3d 285 (Tex. Crim.. App. 2006) ........................................ 31

*Rabb v. State*, 434 S.W.3d 613 (Tex. Crim. App. 2014) ........................................... 43

*Sanchez v. State*, 182 S.W.3d 34 (Tex. App—San Antonio 2005), *aff'd*, 209 S.W.3d 117 (Tex. Crim. App. 2006). 26

*Sandoval v. State*, 409 S.W.3d 259 (Tex. App.—Austin 2013, no pet.) ......33, 37, 39

*Schmuck v. U.S.*, 489 U.S. 705 (1989) ...................................................................... 24

*Ex parte Sewell*, 606 S.W.2d 924 (Tex. Crim. App. 1980) ....................................... 23

*Steward v. State*, 830 S.W.2d 771 (Tex. App.—Houston [14th Dist.] 1992, no writ) ....... 23

*Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007) ....................................... 28

*Sullivan v. State*, 701 S.W.2d 905 (Tex. Crim. App. 1986) ..................................... 43

*Taylor v. State*, 332 S.W.3d 483 (Tex. Crim. App. 2011) ....................................... 24

*Temple v. State*, 390 S.W.3d 341 (Tex. Crim. App. 2013) ....................................... 40

*Thomason v. State*, 892 S.W.2d 8 (Tex. Crim. App. 1994) ...................................... 23

*Thompson v. State*, 574 S.W.2d 103 (Tex. Crim. App. [Panel Op.] 1978) ......... 25, 26

*Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014) .................................... 44

*Williams v. State*, 958 S.W.2d 186 (Tex. Crim. App. 1997) .................................... 32

*Wirth v. State*, 361 S.W.3d 694 (Tex. Crim. App. 2012) .......................................... 26

*Wood v. State*, 632 S.W.2d 734 (Tex. Crim. App. 1982) ........................................... 23

*Woodard v. State*, 322 S.W.3d 648 (Tex. Crim. App. 2010) ................................ 24, 25

*Woods v. State*, 653 S.W.2d 1 (Tex. Crim. App. 1982) ............................................ 26

*Young v. State*, 621 S.W.2d 779 (Tex. Crim. App. [Panel Op.] 1981) ............... 26, 27

## Statutes & Rules

TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006) ..................................... 24

TEX. CODE CRIM. PROC. ANN. art. 37.09 (1) (West 2006) ............................... 23

TEX. CODE CRIM. PROC. ANN. art. 37.14 (West 2006) ............................... 25, 28

TEX. CONST. art. I, § 10 ............................................................................. 25

TEX. PEN. CODE ANN. § 30.02 (West 2011) ...................................................... 23

TEX. PEN. CODE ANN. § 31.03 (West 2011) ........................................ 23, 26, 42

TEX. PEN. CODE ANN. § 31.09 (West 2011) ...................................................... 42

TEX. R. APP. P. 33.1 ................................................................... 30, 36, 39

TEX. R. APP. P. 44.2 ................................................................... 35, 37, 39

TEX. R. EVID. 401 ..................................................................................... 32

TEX. R. EVID. 403 ..................................................................................... 32

TEX. R. EVID. 801 ................................................................... 30, 36, 38

TEX. R. EVID. 802 ......................................................................... 30, 36

TEX. R. EVID. 803 ......................................................................... 30, 31

U.S. CONST. amend. V ............................................................................... 25

U.S. CONST. amend. VI ..................................................................... 31, 37, 39

# STATEMENT OF THE CASE

The appellant, Andrew Elon Garraway ("Garraway"), was indicted for twenty counts of burglary of a habitation. 3 R.R. at 15–22. The case proceeded to trial (with evidence beginning on April 15, 2014), and the State ultimately abandoned two counts. 7 R.R. at 4. The trial court dismissed those counts and submitted the remaining eighteen to the jury along with a lesser-included offense of theft where the value of the property stolen was $1,500 or more but less than $20,000, a state jail felony. 7 R.R. at 6–25.

On April 21, 2014, the jury acquitted Garraway of all burglary counts but convicted him of theft. 7 R.R. at 67. At a later hearing on June 19, 2014, the trial court sentenced Garraway to two years in state jail and a $1,500 fine but probated the sentence for five years and placed him on community supervision. 8 R.R. at 4. That conviction is the basis of this appeal.

# STATEMENT REGARDING ORAL ARGUMENT

The appellant is not requesting oral argument because the issues presented in this appeal are not novel and the record is straightforward. However, if the State requests oral argument or this court believes it would help resolve this matter, the appellant would like an opportunity to appear and argue.

# ISSUES PRESENTED

Garraway presents six principal issues on appeal:

### Issue One  Theft as a Lesser-included Offense

Was theft of property valued at $1,500 \leq \$20,000$ a lesser-included offense of burglary as-indicted in this case, and if not, was Garraway egregiously harmed by its submission to the jury?

### Issue Two  Elements in the Theft Charge

Did the trial court's charge on theft of property valued at $1,500 \leq \$20,000$ require the jury to unanimously find all elements of the offense beyond a reasonable doubt, and if not, was Garraway egregiously harmed by that error?

### Issue Three  LeadsOnline Exhibits

Did the trial court abuse its discretion by admitting State's Exhibits 36, 37, & 41 over Garraway's objections to hearsay, confrontation, foundation, relevance, and prejudice, and if so, did that harm affect Garraway's substantial rights?

### Issue Four  Kajileh's Effective Consent Testimony

Did the trial court abuse its discretion by admitting testimony from Justin Kajileh about effective consent over Garraway's objections to hearsay and confrontation, and if so, did that harm affect Garraway's substantial rights?

**Issue Five**  Jarman's Ownership Testimony

Did the trial court abuse its discretion by admitting testimony from Detective Mark Jarman about ownership over Garraway's objections to hearsay and confrontation, and if so, did that harm affect Garraway's substantial rights?

**Issue Six**  Legal-sufficiency of the Evidence

Was the evidence legally sufficient to convict Garraway of theft of property valued at $1,500 \leq $20,000?

# STATEMENT OF FACTS

The indictment in this case charged Garraway with twenty counts of burglary of a habitation. 3 R.R. at 15–22. Each count alleged the date, the county, the name of the relevant owner, a lack of consent, and that the defendant entered each habitation "with intent to commit theft, did attempt to commit theft, and did commit theft." *Id.* However, no count described the stolen property or its value and there was no allegation that the burglaries or thefts were committed as part of one scheme or continuing course of conduct. *Id.*

At trial, five of the twenty property owners ("owners") named in the indictment testified. Amy Zuniga testified that on February 22, 2011, she discovered her television, laptop, and saxophone missing from her Hays County apartment, which was part of a complex called University Heights. 4 R.R. at 39. She later recovered the saxophone from the police. 4 R.R. at 40–41. On redirect, she added that the person who went into her apartment did not have her permission and that she did not know Garraway. 4 R.R. at 44.

Andrew Davila said that on March 4, 2011, he was contacted by his roommate about the burglary of their apartment, also located in University Heights. 4 R.R. at 47. He found that his Xbox, controllers, and games were gone, along with his roommate's calculator and possibly a subwoofer from his entertainment system. 4 R.R. at 47–48. The Xbox and calculator were later returned by the police. 4 R.R. at 49. Davila did not give anyone permission to enter his apartment and did not know Garraway. 4 R.R. at 50.

Kaitlyn Cunningham told the jury that on March 24, 2011, she noticed credit cards and cash missing from her purse, which was in the living room of her apartment at the Outpost, a complex in Hays County. 4 R.R. at 55. After checking her statements online, Cunningham discovered that her cards had been used at several stores without her permission. 4 R.R. at 56. She did not give anyone permission to use her cards or enter her apartment, and she did not know Garraway. 4 R.R. at 57.

April Kontak stated that on March 29, 2011, she awoke to find her computer and credit card missing from her apartment at the Outpost. 4 R.R. at 69–70. She later recovered the computer from the police. 4 R.R. at 71. The credit card, meanwhile, had been used at a number of stores without her permission. 4 R.R. at 72. She did not know Garraway and did not give him permission to use her cards, take her property, or enter her apartment. 4 R.R. at 72.

Finally, Caitlyn Smith testified that on April 5, 2011, cash and some electronics turned up missing at her apartment, located at the Grove in Hays County. 4 R.R. at 75–76. Among the electronics was an "SLR camera . . . a Casio or a Canon . . . like an 800-dollar camera." 4 R.R. at 76. Smith did not give anyone permission to enter her apartment or take her property. 4 R.R. at 76–77. She later got the SLR camera and some other property back from the police. 4 R.R. at 77.

Justin Kajileh ("Kajileh"), an accomplice witness, was the next person to take the stand. He identified Garraway as an old friend and classmate from elementary school all the way through college at Texas State University. 4 R.R. at

81. While attending the college, Garraway asked Kajileh to lend him money to get his car out of the shop, but since Kajileh had none, the two turned to burglary. 4 R.R. at 82–83. They targeted apartment complexes in Hays County in the hours before dawn. 4 R.R. at 83–84. They would look for unlocked doors, which one person would enter to take things—mostly cash or electronics—while the other stood watch just outside. 4 R.R. at 84–85.

On the first night, they began in the same complex Kajileh lived in: University Heights in Hays County. 4 R.R. at 83. Among other things, they took a saxophone, the only one they ever stole during their string of burglaries. 4 R.R. at 85. Kajileh and Garraway then visited several pawnshops in the Austin area and sold what they had taken, earning around $1,500. 4 R.R. at 87–88.

When asked whether he had gone to the Outpost or the Grove (among other complexes), Kajileh testified that he had gone to "the majority" of them. 4 R.R. at 89. Later, he stated that he had committed burglaries at both complexes, but not that Garraway was involved. 4 R.R. at 93 & 99. For other complexes, Kajileh said he "possibly" committed the burglaries, 4 R.R. at 99, but claimed he never committed burglaries alone—Garraway was always there. 4 R.R. at 100.

Kajileh was asked whether each owner named in the indictment against Garraway had given Garraway permission to enter the residence or take any property, and each time, Kajileh responded that they had not. 4 R.R. at 90–98. Defense Counsel objected several times "on hearsay and confrontation clause" but was overruled each time. 4 R.R. at 91–94.

The burglaries continued for several months, and Kajileh described the evolution of their methods and additional pawn shops he and Garraway went to in both Austin and San Antonio. 4 R.R. at 100–108. The scheme came to a head when Garraway was arrested and Kajileh was called in by the police for questioning, 4 R.R. at 108, which prompted Kajileh to confess and turn over some of the stolen property to the police. 4 R.R. at 109–10. He also told police how he and Garraway would use stolen credit cards to purchase food, gas, and gift cards at different retailers. 4 R.R. at 111–15.

Kajileh confirmed that he and Garraway went to the EZ Pawn, Cash Pawn, and Cash America Pawn pawnshops in Austin on February 22, 2011 by authenticating video and photographic evidence of the two at those locations. 4 R.R. at 118–28. There, the two sold a saxophone and an Xbox. 4 R.R. at 125–26. On February 25, 2011, the two were captured on video at two different EZ Pawn locations and then again at Action Pawn in Austin, where they sold an Xbox and a PlayStation. 4 R.R. at 128–35. On March 5, 2011 and again on March 31, 2011, Garraway and Kajileh were recorded at an Action Pawn pawnshop in San Antonio. 4 R.R. at 135–37 & 147–49. Kajileh went on to authenticate a video of Garraway and him using a credit card at a Target store in Kyle on March 24, 2011, 4 R.R. at 143, and numerous other videos and images of the pair at various pawnshops in the Austin and San Antonio area, 4 R.R. at 143–66. There were also videos of Kajileh at pawnshops alone on different dates selling what he said was property from the burglaries he and Garraway committed. 4 R.R. at 138–43.

He admitted to having signed a contract to testify in exchange for a favorable plea agreement, 4 R.R. at 166–73, and on cross-examination, Kajileh clarified that although he had never committed a burglary alone, he was not present for all the burglaries alleged against Garraway; he claimed that he had participated in perhaps half of them. 4 R.R. at 180. He responded "I don't know" each time when asked whether he had participated in the burglary described by each count, and summarized it by saying "I don't know if I committed any of the burglaries on this piece of paper. I don't know." 4 R.R. at 185–87.

Kajileh's testimony was briefly interrupted for the State to call Buda police officer Brandon Hale, who testified that he investigated cases of credit card abuse at a Wal-Mart and a gas station around March 24, 2011. 4 R.R. at 190. After consulting with other law enforcement agencies, he determined that the victims were Kaitlyn Cunningham and April Kontak, and he connected his cases with burglaries being investigated by Mark Jarman, a San Marcos detective. 4 R.R. at 191. Diana Talamantes, a detective with the Kyle Police Department, testified that she similarly connected a credit card abuse case that affected Kaitlyn Cunningham to a burglary being investigated by Detective Jarman. 4 R.R. at 196.

Recalled to the stand, Kajileh testified to an additional video and photographs showing Garraway and him at a Wal-Mart store using unspecified stolen credit cards. 5 R.R. at 38–47. Further cross-examination reiterated that Kajileh could not say whether any of the burglaries alleged against Garraway were the ones he and Garraway had participated in together. 5 R.R. at 54–60.

The State's next witnesses were employees of some of the pawnshops at which Garraway and Kajileh sold were seen selling property.

David Sears testified that he worked at Cash Pawn and authenticated a pawn slip (State's Exhibit 32) showing that on February 22, 2011, Garraway pawned an Xbox 360 and its controllers as well as a saxophone. 5 R.R. at 61–66.

Michael Medina said that he worked at EZ Pawn and brought two pawn slips (State's Exhibits 31 and 33) showing that on February 25, 2011, Garraway pawned Blu-ray movies, videogames, PlayStation and Xbox game consoles, controllers, and a calculator, and on April 8, 2011, another Xbox, several controllers, and another calculator. 5 R.R. at 67–72.

Frank McCray stated that he worked at Action Pawn and produced a pawn slip (State's Exhibit 34) showing that on February 25, 2011, Garraway pawned yet another Microsoft Xbox 360. 5 R.R. at 73–76.

Richard Barker, an employee of another Action Pawn, sponsored a pawn slip (State's Exhibit 35) showing that on March 31, 2011, Kajileh pawned an Xbox, accessories, and games. 5 R.R. at 77–80.

Alan Shaw worked at Cash America Pawn, and his pawn slip (State's Exhibit 30) showed that on April 4, 2011, Garraway pawned a PlayStation 3. 5 R.R. at 81–85.

Denton Fox testified that he worked for Wal-Mart and authenticated a video (State's Exhibit 28) corroborating part of Kajileh's testimony about he and Garraway using a stolen credit card there. 5 R.R. at 86–88.

The State then called Adrian Marin ("Marin"), a San Marcos Police Department detective. He testified that after getting "hits" on LeadsOnline, a law enforcement pawn database, he retrieved suspect property from various pawnshops and drafted a search warrant for Garraway. 5 R.R. at 96–105. However, after objection to hearsay by the defense, the court would not let him testify to who owned the property. 5 R.R. at 100 & 103. Marin then executed the warrant and retrieved a variety of suspect property from Garraway's residence ranging from electronics to purses to combs. 5 R.R. at 107. Marin then completed a similar process with Kajileh and other suspects. 5 R.R. at 112–14.

During Marin's testimony, the State asked him to authenticate State's Exhibit 36, a set of LeadsOnline reports on Garraway and Kajileh. 5 R.R. at 119. Marin testified that the records were entered by various pawnshop employees for law enforcement use, that it was in the regular course of business for *some* pawnshops to do so, but that some may maintain records in other ways ("I'm not sure. I'm not sure if they still do that or—I know that if they do LeadsOnline, that they are not required to hand-deliver anything over."). 5 R.R. at 119–20. He also affirmed that sometimes the records were not entered near the time of the transactions they described or "in a timely fashion" and that either clerks or managers may be entering information after the fact. *Id.* He then reiterated

several times that it was a "law enforcement based service" that non-law enforcement personnel could not use to search transactions or update information. 5 R.R. at 122.

When the State moved to admit State's Exhibit 36, Defense Counsel objected (among other grounds) that it was "hearsay from probably 50 to 60 different sources," that it denied Garraway the right to confrontation, that it was a law enforcement report, and that a proper foundation had not been laid for it; indeed, that "a whole lot of [the exhibit] has not been verified by [Marin] in any form, fashion or style" because the detective was not qualified to authenticate it. 5 R.R. at 124–25. He also objected that it was more prejudicial than probative because it contained "numerous items . . . which cannot be identified as stolen property [without] names on them. But the danger to the jury in seeing that documentation is to go: 'Oh, all of this must be stolen' [which] he can't testify [to]." 5 R.R. at 126. It was discovered during the evidentiary discussion that the exhibit contained handwritten notes from both Marin and an unknown person who Marin speculated was another detective. 5 R.R. at 124–25.

The State responded that State's Exhibit 36 was probative because Kajileh had already testified that everything he and Garraway pawned was stolen and that it was not a law enforcement record because pawnshops access it as well to enter the initial data. 5 R.R. at 127. As for authentication, the argument was that it was a business record, and in the digital age, anyone who can access and understand the program was qualified to authenticate its reports. 5 R.R. at 127–28.

The court admitted State's Exhibit 36, 5 R.R. at 128, but the cross-examination of Marin focused on other matters. 5 R.R. at 128–45.

The State's last witness was Detective Mark Jarman ("Jarman"), also with the San Marcos Police Department. He testified that he and Marin first connected Garraway with credit card abuse cases involving owners Kaitlyn Cunningham and April Kontak and a burglary involving an unnamed owner and a stolen Xbox. 5 R.R. at 150–52.

The bulk of Jarman's testimony concerned the process of the investigation. Jarman and Marin found hits on LeadsOnline then went to pawnshops to retrieve property and match it to reports and owners (only one of whom, a "Mr. Lopez" who owned an Xbox, was ever identified in Jarman's testimony). 5 R.R. at 153–60. They also investigated and interviewed other suspects, some of whom had missing property (suspect Aaron Carr, for example, had April Kontak's laptop). 5 R.R. at 161–63.

The State discussed Exhibit 36 with Jarman and also offered State's Exhibit 37, a summary of the investigation and various aspects of multiple police reports covering dates, pawnshop locations, pawned property, and the identity of the person pawning the property. 5 R.R. at 170–71. Defense Counsel objected, saying that "it is confusing, it is work product, it's hearsay [and] assumes facts not in evidence"; the State responded that it was already "in the LeadsOnline [State's Exhibit 36]." 5 R.R. at 171. The court admitted the exhibit. *Id.*

The State also went through the indictment and asked whether each listed owner had identified specific property as their own. 5 R.R. at 187–97. Detective Jarman connected each owner to each piece of property through the police reports they had filed and asked them to verify that they owned the property. 5 R.R. at 187. Defense Counsel objected to hearsay, and arguably, confrontation, saying the testimony "was hearsay. This individual has not testified. . . . If he wants to testify . . . that's fine. But as far as that individual's identification of property . . . that's purely hearsay." 5 R.R. at 189. The objection was overruled and the testimony permitted. *Id.*

The last piece of evidence admitted through Detective Jarman was State's Exhibit 41, a summary of his investigation Jarman himself created "through LeadsOnline and what [he] actually recovered from the pawnshops." 6 R.R. at 56. Garraway objected "on the basis of hearsay. A summary of his police report with excerpts that he thinks is best for the jury to hear is not admissible [and] it is duplicative of the information from the LeadsOnline." 6 R.R. at 57. That was overruled and the exhibit admitted. *Id.*

The remaining testimony from Detective Jarman established that some of the owners listed in the indictment had never gotten their property back, and much of what was found had been pawned by or recovered from Kajileh or other suspects. 6 R.R. at 58–71.

The state then rested, and after a brief opening, Garraway himself took the stand. 6 R.R. at 76. He testified that Kajileh would regularly bring him

property that they pawned together; he found it suspicious, but Kajileh never said where the property came from and Garraway never asked. 6 R.R. at 81–84. Eventually that progressed to Kajileh showing Garraway credit cards he knew did not belong to Kajileh, but Garraway nonetheless used them together with Kajileh. 6 R.R. at 86. He denied having any part in the burglaries. 6 R.R. at 88.

On cross-examination, Garraway admitted that the value of all items he and Kajileh pawned would be over $1,500. 6 R.R. at 110.

Both sides rested and closed following Garraway's testimony, and the parties discussed the charge. 7 R.R. at 4. As that discussion began, the State abandoned (and the court dismissed) the final two counts in the indictment. 7 R.R. at 4–5. The charge, prepared earlier by State, 4 R.R. at 63, was not objected to by either side. 7 R.R. at 4–5.

It tracked each of the remaining burglary counts but added a lesser-included of state jail felony theft alleging that:

> Andrew Garraway, on or about and between the 22nd day of February 2011 and the 14th day of April 2011, in the County of Hays and State of Texas, pursuant to one scheme and continuing course of conduct did then and there intentionally and unlawfully appropriate property: to wit, various musical instruments and equipment and electronic equipment of the value of $1,500 or more, but less than $20,000 with the intent to deprive the owners of the property: to wit, [each owner listed in the indictment]

7 R.R. at 21.

Garraway's closing focused on attacking Kajileh's credibility and the conclusiveness of the investigation in the case. 7 R.R. at 27–52. It also

highlighted the lack of proof about value, 7 R.R. at 44–45, and ownership. 7 R.R. at 50–52. The State's closing responded by addressing the credibility of both Garraway and Kajileh, emphasizing the applicability of the law of parties, and highlighting the documentary evidence in the case. 7 R.R. at 53–62. The State also informed the jury that it could convict for any form of unlawful appropriation (although none submitted). 7 R.R. at 55–56.

# Summary of the Argument

The argument in this case can be divided into three areas: charge error, evidentiary error, and legal sufficiency of the evidence. Charge error allowed Garraway's conviction for a lesser-included that was not properly within the indictment. The burglary counts in the indictment simply did not contain all the necessary elements that would include theft of property valued at $1,500 or more but less than $20,000—specifically, a description of the stolen property and its value or any language to aggregate the various thefts underlying the burglaries. The charge on the lesser-included also entirely omitted the essential element of "lack of effective consent" and failed to require the jury to unanimously agree about what property was stolen and from whom. Garraway was egregiously harmed by these errors, which warrants remand for a new trial.

The evidentiary matters include the admission of three State's exhibits and certain testimony. The exhibits were all from or based on a program called LeadsOnline, a database used by law enforcement. As Defense Counsel objected at trial, those exhibits were hearsay, inadmissible law enforcement records, not properly authenticated as business records, violations of Garraway's right to confrontation, not relevant, and more prejudicial than probative. The testimony was hearsay about effective consent, ownership, and property identity that met no exception to hearsay whatsoever and infringed on Garraway's confrontation rights. The improper admission of this evidence was an abuse of discretion that affected Garraway's substantial rights and therefore merits remand for a new trial.

Finally, the evidence was legally insufficient because there was no evidence to establish the identity or lack of consent of many of the owners involved and no legally adequate evidence to establish a property value falling within the state jail felony range. While normally that might call for a reformation of the judgment, there can be no certainty that the jury found every element of any lesser-included offense due to the errors in the jury charge, leaving entry of an acquittal as the only recourse.

# ARGUMENT

## Issue One  Theft as a Lesser-included Offense

**Garraway was egregiously harmed because the jury charge authorized a conviction for theft of property valued at $1,500 ≤ $20,000, which was not a lesser-included offense of burglary as-indicted in this case**

Theft of property valued at $1,500 or more but less than $20,000 was included in the jury charge as a lesser-included offense of the burglaries charged in the indictment. A lesser-included offense is "established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09 (1) (West 2006). That determination is made by comparing the elements of the greater offense as set forth in the indictment with the elements of the lesser offense, a process known as the "cognate pleadings" test. *Hall v. State*, 225 S.W.3d 524, 536–37 (Tex. Crim. App. 2007). Since the actual pleadings are the focus, "when the greater offense may be committed in more than one manner, the manner alleged will determine the availability of lesser-included offenses." *Id.* at 531.

Burglary and theft are distinct offenses; burglary is a prohibited entry, while theft is a prohibited taking. *Compare* TEX. PEN. CODE ANN. § 30.02 (West 2011) (elements of burglary) *with id.* § 31.03 (elements of theft). Because burglary may be committed by a prohibited entry *followed by* a theft, theft may be a lesser-

included offense if burglary is indicted that way. *Hall*, 225 S.W.3d at 537. The indictment in this case did just that.

However, theft has elements not normally associated with burglary, including a description of the stolen property and its value. *Wood v. State*, 632 S.W.2d 734, 736 (Tex. Crim. App. 1982). For theft to be a lesser-included offense of burglary, then, a burglary indictment must actually include those elements. *Ex parte Sewell*, 606 S.W.2d 924, 924 (Tex. Crim. App. 1980); *Peoples v. State*, 566 S.W.2d 640, 641 (Tex. Crim. App. [Panel Op.] 1978); *Middleton v. State*, 187 S.W.3d 134, 140 (Tex. App.—Texarkana 2005, no pet.); *Steward v. State*, 830 S.W.2d 771, 774 (Tex. App.—Houston [14th Dist.] 1992, no writ); *see Dean v. State*, 938 S.W.2d 764, 770 (Tex. App.—Houston [14th Dist.] 1997, no writ) (theft by receiving stolen property not lesser-included offense of burglary unless all elements of theft alleged in indictment). Likewise, aggregate thefts must allege that the offenses were all part of one scheme or continuing course of conduct. *Thomason v. State*, 892 S.W.2d 8, 10 (Tex. Crim. App. 1994). If a burglary indictment does not include all elements that must be proven in a theft, a lesser-included offense of theft cannot be submitted to a jury. *Middleton*, 187 S.W.3d at 140.

The indictment in this case did not describe the stolen property or its value. As a consequence, theft was not an available lesser-included offense. There was also no allegation in the indictment of a single scheme or continuing course of conduct, but the "lesser-included" combines all counts in the indictment into a single aggregate theft; it actually requires *greater* proof than any allegation

Garraway was charged with. The charge he was convicted of should never have been submitted to the jury in the first place.

Errors in the trial court's charge to the jury cannot result in reversal unless "the error . . . was calculated to injure the rights of the defendant [or if he] has not had a fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). That is decided through a harm analysis. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985). In cases like this, where there was no objection to the charge, the threshold is "egregious harm." *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); *Almanza*, 686 S.W.2d at 171.

Egregious harm refers to errors "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 489–90 (Tex. Crim. App. 2011); *Almanza*, 686 S.W.2d at 172. A charge that authorizes conviction for an improper lesser-included offense meets that standard because it deprives the defendant of notice of the charges against him. *Schmuck v. U.S.*, 489 U.S. 705, 717–18 (1989); *Woodard v. State*, 322 S.W.3d 648, 657 (Tex. Crim. App. 2010); *Beasley v. State*, 426 S.W.3d 140, 147–49 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see* U.S. CONST. amend. V (establishing right to be charged by indictment); TEX. CONST. art. I, § 10 (establishing right to notice of charges).

In other words, conviction of an improper lesser-included offense is a *per se* violation of a defendant's due process rights, and an "unobjected-to and

unwaived submission of an unindicted offense in the jury charge followed by a conviction of that offense meets *Almanza's* 'egregious harm' standard." *Woodard*, 322 S.W.3d at 658–59. Submission of an erroneous lesser-included offense is only harmless if the defendant actively requested the charge. *Id.* at 659.

Garraway did not request the lesser-included charge of theft in this case; in fact, the charge was suggested by the State. As a result, he suffered egregious harm, and the proper remedy in this situation is a new trial. *Benavidez v. State*, 323 S.W.3d 179, 181 (Tex. Crim. App. 2010). The new trial, of course, should be on the improperly submitted lesser-included offense, since when a defendant is convicted "of an offense lower than that for which he [wa]s indicted," the previous acquittal of the higher offense in the first trial "shall be considered an acquittal of the higher offense" in the jeopardy context of any new trial. TEX. CODE CRIM. PROC. ANN. art. 37.14 (West 2006).

**Issue Two**  Elements in the Theft Charge

**Garraway was egregiously harmed because the jury charge authorized a conviction for theft of property valued at $1,500 ≤ $20,000 without requiring the jury to unanimously find all elements of that offense beyond a reasonable doubt**

A jury charge "must contain an accurate statement of the law and must set out all the essential elements of the offense." *Dinkins v. State,* 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). Unsurprisingly, a charge that does not include all elements of an offense is fundamentally defective. *Thompson v. State*, 574 S.W.2d

103, 104 (Tex. Crim. App. [Panel Op.] 1978); *Evans v. State*, 606 S.W.2d 880, 883 (Tex. Crim. App. [Panel Op.] 1980), *overruled on other grounds*, *Woods v. State*, 653 S.W.2d 1 (Tex. Crim. App. 1982); *Sanchez v. State*, 182 S.W.3d 34, 62 (Tex. App.—San Antonio 2005), *aff'd*, 209 S.W.3d 117 (Tex. Crim. App. 2006). While the indictment in this case did not contain all the elements that would have made theft a lesser-included, the actual lesser-included charge did not contain all the elements of theft.

To prove a theft, the State must show "that the defendant unlawfully appropriated property with the intent to deprive the owner of property without the owner's effective consent." TEX. PEN. CODE ANN. § 31.03 (a) (West 2011); *Wirth v. State,* 361 S.W.3d 694, 697 (Tex. Crim. App. 2012). The application section of a jury charge for theft must (among other things) require the jury to find beyond a reasonable doubt whichever statutory definition of "unlawful" is relied upon, such as the lack of effective consent of the owner. *Milton v. State*, 652 S.W.2d 958, 959 (Tex. Crim. App. 1983); *Young v. State*, 621 S.W.2d 779, 780–81 (Tex. Crim. App. [Panel Op.] 1981); *Evans,* 606 S.W.2d at 883; *Hill v. State*, 625 S.W.2d 803, 806–07 (Tex. App.—Houston [14th Dist.] 1981, no writ). That was entirely omitted from the charge given to the jury in Garraway's trial, and in fact, the State told the jury in its closing that they could convict based on any definition of unlawful, although none were actually alleged in the application portion of the charge.

The relevant standard here is whether Garraway suffered "egregious harm" from the charge error. *Mann,* 964 S.W.2d at 641; *Almanza,* 686 S.W.2d at 171 & 174. That standard is met by a conviction obtained without requiring the jury to find all elements of an offense beyond a reasonable doubt. *Sanchez,* 182 S.W.3d at 62. In fact, the Court of Criminal Appeals and other courts of appeals have explicitly found jury charges on theft insufficient for failing to require proof that the appropriation was without the effective consent of the owner. *Milton,* 652 S.W.2d at 959; *Young,* 621 S.W.2d at 780–81; *Evans,* 606 S.W.2d at 883; *Hill,* 625 S.W.2d at 806–07.

Considering the elements in the charge raises the additional question of jury unanimity. In this case, the names of each owner from burglaries were listed disjunctively and a general description of all collective property was listed conjunctively in the charge on theft. Although the names as such are not substantive elements of theft, they describe an element: ownership. *Byrd v. State,* 336 S.W.3d 242, 251 (Tex. Crim. App. 2011). In an aggregate theft case, a jury must "unanimously agree about what property was unlawfully appropriated and who owned it," as discussed at length recently by the Fourteenth Court of Appeals in *Kent v. State,* No. 14-13-00375-CR, at *9–17 (Tex. App.—Houston [14th Dist.], Aug. 28, 2014, no pet.).

In *Kent,* the court's charge covered multiple thefts from multiple owners over an extended time period but did not specify that the jury must be unanimous about which thefts it was relying on to convict, just like the charge here. *Id.* at *5.

On appeal, the Fourteenth Court found that because it could not determine from either the charge or the record whether the jury had been unanimous about which owners or property (and therefore, which complete thefts) were being relied upon, reversal was called for. *Id.* at *25–26.

Like charge error that omits elements, charge error that authorizes a non-unanimous verdict can result in egregious harm. *Stuhler v. State*, 218 S.W.3d 706, 719–20 (Tex. Crim. App. 2007); *Ngo v. State*, 175 S.W.3d 738, 751–52 (Tex. Crim. App. 2005). A telling example is found in *Stuhler*. There, the Court of Criminal Appeals noted that although the State "did not make a point of stressing to the jury that it need not agree which of the elemental facts occurred," the very fact that there was significant dispute over which alternative facts had been proven suggested egregious harm. *Stuhler*, 218 S.W.3d at 720. Here, similarly, because Garraway vigorously disputed the proof of ownership through both cross-examination (particularly of Kajileh) and closing argument, the opportunity for a non-unanimous verdict on that point worked an egregious harm.

The proper remedy here is a new trial on theft. *See* TEX. CODE CRIM. PROC. ANN. art. 37.14 (West 2006) (conviction of lesser-included acquittal of higher charge if new trial granted); *Benavidez*, 323 S.W.3d at 181 (charge error resolved by new trial).

**The trial court abused its discretion by admitting State's Exhibits 36, 37, & 41 over Garraway's objections to hearsay, confrontation, foundation, relevance, and prejudice, which caused harm affecting Garraway's substantial rights**

Any error related to the admission of evidence must, of course, be preserved by a timely objection at trial. TEX. R. APP. P. 33.1 (a). The evidence about the identity and value of most of the property in Garraway's trial came from State's Exhibits 36, 37, and 41. Exhibit 36 was a printout from LeadsOnline, a law enforcement database documenting pawnshop transactions; it was objected to on the grounds of hearsay, confrontation, a lack of proper foundation, relevance, and undue prejudice. Exhibits 37 and 41 were summaries prepared by detectives of the police investigation and findings, which incorporated a great deal of data from LeadsOnline as well as information from various police reports prepared by officers who did not testify; they were objected to on the grounds of hearsay and undue prejudice.

Hearsay is any out-of-court statement offered to prove the truth of the matter asserted (aside from a few exceptions that are irrelevant here). TEX. R. EVID. 801. It is not admissible unless it meets an exception outlined in the Rules of Evidence. TEX. R. EVID. 802. One such exception is for public records and reports; however, the relevant rule explicitly excludes "in criminal cases matters observed by police officers and other law enforcement personnel." TEX. R.

EVID. 803 (8)(B). If hearsay is not admissible due to that exclusion, it is not alternatively admissible as a business record. *Cole v. State*, 839 S.W.2d 798, 804–06 (Tex. Crim. App. 1990).

Business records that are not also law enforcement records are another exception. These include any "memorandum, report, record, or data compilation in any form, of acts, events, conditions, opinions, or diagnoses, [1] made at or near the time [2] by, or from information transmitted by, a person with knowledge, [3] if kept in the course of regularly conducted business activity, and [4] if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, [5] all as shown by the testimony of the custodian or other qualified witness." TEX. R. EVID. 803 (6). For someone to be an "other qualified witness," the person must have personal knowledge about how the records are entered and maintained. *Davis v. State*, 699 S.W.2d 955, 958 (Tex. App.—Fort Worth 1985, no writ).

Even if an exception to hearsay is met, a defendant has a right to confront the witnesses against him. U.S. CONST. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 404 (1965). That right excludes any hearsay statement—even those that might otherwise meet an exception—if the statement is testimonial based on the "primary purpose" test. *Michigan v. Bryant*, 131 S. Ct. 1143, 1161–62 (2011); *Coronado v. State*, 351 S.W.3d 315, 324 (Tex. Crim. App. 2011). The question is whether, viewing the circumstances surrounding the out-of-court statement neutrally, a reasonable person would think that the statement was made primarily

to establish facts for later litigation (which makes it testimonial). *Bryant*, 131 S. Ct. at 1161–62; *Coronado*, 351 S.W.3d at 324.

Procedurally admissible evidence must still be relevant for admission. Evidence is relevant if it makes "any fact that is of consequence" to the case "more probable or less probable." TEX. R. EVID. 401. The test is whether a reasonable person would find the evidence helpful in resolving a matter of consequence to the trial. *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990).

Finally, relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Weighing probative value against prejudice is done by balancing

> (1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational way; (3) the time the proponent will need to develop the evidence; and (4) the proponent's need for the evidence, *i.e.*, whether other evidence is available and whether the fact of consequence is related to a disputed issue.

*Montgomery*, 810 S.W.2d at 378; *accord Powell v. State*, 189 S.W.3d 285, 287 (Tex. Crim.. App. 2006). Once a rule 403 objection has been made, a trial court *must* perform this balancing test; if the record is silent on that point, an appeals court must presume the trial court did so but simply did not put it on the record. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).

State's Exhibits 36, 37, and 41 were hearsay because they were offered to prove all aspects of the transactions they described. They were also law enforcement records; Marin testified at length that they are only accessible by law enforcement personnel and pawnshop employees and that law enforcement agents enter information into the database to further criminal investigations. State's Exhibit 36, the printout of the LeadsOnline information, actually says "The information contained herein is for authorized law enforcement use only" on the footer of every single page. In addition to the LeadsOnline data, the other two exhibits also contained information culled from various police reports. These exhibits are specifically excluded by the Rules of Evidence.

Even if they were not, Marin and Jarman did not and could not lay the foundation for these exhibits as business records. The testimony was that the records were not necessarily made at or near the time of the transaction being documented, and it was not established that the people entering information had personal knowledge of the transactions. Moreover, the detectives' general confusion and admitted lack of understanding about the details of how the records were generated demonstrate that they are not "other qualified witnesses" who could authenticate the records.

The right to confrontation undermines these exhibits as well. As the product of a database used strictly for investigations by law enforcement and the cornerstone of the actual investigation of Garraway, the LeadsOnline exhibits were testimonial. In fact, State's Exhibit 36 included not only the LeadsOnline

information, but also the handwritten notes of multiple detectives, and both State's Exhibits 37 and 41 were entirely prepared by detectives in anticipation of trial based on LeadsOnline information and inadmissible police reports created by officers who did not testify. Admitting these testimonial documents denied Garraway his constitutional right to confront the witnesses against him.

Since there is no dispute that much of the information in these exhibits concerned transactions and property not related to the indictment against Garraway, the exhibits were also irrelevant. But more importantly, as Defense Counsel accurately noted, the exhibits were more prejudicial than probative. They were only partially probative due to the relevance issues already mentioned, but the irrelevant material had a strong potential to irrationally impress the jury by suggesting that much more property had been taken than was proven. The State also spent considerable time with multiple witnesses developing the evidence despite limited need for it—other evidence was available to prove the same issues, as demonstrated by the actual owners and pawnshop personnel the State did call to the stand at trial.

Admissibility decisions by a trial court are reviewed for abuse of discretion. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). Admitting evidence is an abuse of discretion if the decision on admissibility "lies outside the zone of reasonable disagreement." *Martinez*, 327 S.W.3d at 736. Here, the court admitted hearsay documents that were undisputedly law enforcement

records and summaries of both those records and police reports. The record also shows that those documents were not supported by a proper foundation and that there were issues of confrontation, relevance, and prejudice tainting them. There is no reasonable disagreement about whether they were admissible—they were not—making the trial court's decision an abuse of discretion.

Improper admission of evidence is a non-constitutional error, so when an abuse of discretion has been shown, the next step is a harm analysis to determine whether the error affected any "substantial rights." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *see* TEX. R. APP. P. 44.2 (b) (standards for non-constitutional errors). Inadmissible evidence does not affect any substantial rights "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla*, 78 S.W.3d at 355 (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). That includes situations in which the same evidence was also properly admitted from other sources. *Brooks v. State*, 323 S.W.3d 893, 897 (Tex. Crim. App. 2010).

*Motilla* and *Johnson* provide useful examples. The appellate court in *Motilla* had fair assurance of the minimal effect of inadmissible evidence because that evidence was "brief and bore no relationship to the sole contested issue in the case," was not unduly prejudicial, and "the State did not emphasize the error," all set against a body of trial evidence in that case that was substantial proof of guilt. *Motilla*, 78 S.W.3d at 359. Conversely, the court in *Johnson* found that

evidence of an extraneous offense was prejudicial by its very nature. *Johnson*, 967 S.W.2d at 416–17. Unlike *Motilla*, the LeadsOnline exhibits here were not brief, were directly related to contested issues in the case, were prejudicial (and objected to on those alternative grounds), were emphasized by the State in both questioning and closing, and were set against evidence weak enough to lead to acquittal on every count in the indictment in favor of a single lesser-included. And like *Johnson*, these exhibits were prejudicial and incorporated evidence of extraneous matters.

As a result, there is no assurance—fair or otherwise—that the inadmissible evidence had no or only slight effect on the verdict against Garraway. In such circumstances, the appropriate remedy is reversal and remand for a new trial. *Id.* at 417.

**Issue Four** Kajileh's Effective Consent Testimony

**The trial court abused its discretion by admitting testimony from Justin Kajileh about effective consent over Garraway's objections to hearsay and confrontation, which caused harm affecting Garraway's substantial rights**

Only evidence that was objected to a trial is subject to review. TEX. R. APP. P. 33.1 (a). In this case, the evidence about effective consent for most owners came from Kajileh, who said that no listed owner had given Garraway consent to enter their residence or take any property. Defense Counsel objected "on hearsay and confrontation clause," which was summarily overruled.

Hearsay is any out-of-court statement provided for proof of its truth. TEX. R. EVID. 801. It is categorically inadmissible unless it meets a legal exception to that rule. TEX. R. EVID. 802. Kajileh's testimony was intended to prove that Garraway did not have the effective consent of the owners, who did not testify. No exception was offered for the statement's admissibility by either the State or the trial court, and no applicable exception is apparent now.

Garraway also had a right to confront the owners in question, as guaranteed by the Confrontation Clause. *See* U.S. CONST. amend. VI (Confrontation Clause); *Pointer*, 380 U.S. at 404 (affirming right to confront witnesses in a criminal trial). Kajileh's statement was testimonial: he was an accomplice-witness contractually cooperating with the State, and the statement was elicited as a stand-in for testimony necessary to establish an element of the offense. *See Bryant*, 131 S. Ct. at 1161–62 (statement testimonial if, viewing attendant circumstances in neutral light, reasonable person would think statement made primarily to establish facts for later litigation); *Coronado*, 351 S.W.3d at 324 (same).

Review of evidentiary issues is a question of abuse of discretion—whether the decision to admit the evidence "lies outside the zone of reasonable disagreement." *Martinez*, 327 S.W.3d at 736; *Sandoval*, 409 S.W.3d at 297. Kajileh's hearsay testimony was admitted without the trial court asking for or finding an exception allowing admission, and there does not appear to be one. Garraway's right to confront the relevant witnesses was also set to one side without

explanation, and none is obvious in hindsight. Allowing Kajileh's testimony on effective consent was an abuse of discretion.

The trial court's abuse of discretion did harm to Garraway's substantial rights because we are left with no fair assurance the evidence had no or minimal influence on the jury. *See* TEX. R. APP. P. 44.2 (b) (standards for non-constitutional errors); *Motilla*, 78 S.W.3d at 355 (improper admission of evidence non-constitutional error subject to harm analysis); *see also Brooks*, 323 S.W.3d at 897 (substantial rights not affected if same evidence properly admitted from other source). Evidence of lack of effective consent from almost all of the owners here was not offered through any other witness or exhibit, so what Kajileh testified to was required to prove an essential element of the offense. *See Motilla*, 78 S.W.3d at 359 (no or mimimal influence by inadmissible evidence where evidence not related to contested issue, not prejudicial, State did not emphasize it, and substantial additional evidence supported conviction). Reversal and remand for a new trial are the correct course of action as a result. *Johnson*, 967 S.W.2d at 417.

**The trial court abused its discretion by admitting testimony from Detective Mark Jarman about ownership over Garraway's objections to hearsay and confrontation, which caused harm affecting Garraway's substantial rights**

Evidentiary issues must be preserved through objection. TEX. R. APP. P. 33.1 (a). The evidence about ownership for most owners in Garraway's trial came from the testimony of Jarman, who stated that he had spoken with the various owners listed in the indictment and they had told him the property was theirs. Defense Counsel objected that this was hearsay and that these witnesses were not testifying (that is, there was no opportunity for confrontation).

Hearsay—an out-of-court statement offered to prove the truth of the matter asserted—is inadmissible unless it meets an exception defined by the Rules of Evidence. TEX. R. EVID. 801 & 802. Jarman's testimony was offered to prove the truth of what the owners had said about various property—namely, that they recognized it as the property that had been stolen from them and that they owned it. Despite the objection, the State pointed to no exception that would allow its admission, and the trial court asked for none before overruling the objection. That is unsurprising, since there is no exception that would apply in these circumstances: the testimony about ownership was classic hearsay.

Its admission also violated Garraway's right to confrontation. Even if an exception to hearsay is met, a defendant has a right to confront the witnesses

against him. *See* U.S. CONST. amend. VI (Confrontation Clause); *Pointer*, 380 U.S. at 404 (affirming right to confront witnesses in a criminal trial). Even if there were an exception, the statements Jarman described were all testimonial: they were made at the urging of police detectives in the course of a criminal investigation to establish facts for Garraway's eventual trial. *See Bryant*, 131 S. Ct. at 1161–62 (statement testimonial if, viewing attendant circumstances in neutral light, reasonable person would think statement made primarily to establish facts for later litigation); *Coronado*, 351 S.W.3d at 324 (same).

Whether evidence was improperly admitted is reviewed for abuse of discretion—whether the decision "lies outside the zone of reasonable disagreement." *Martinez,* 327 S.W.3d at 736; *Sandoval*, 409 S.W.3d at 297. The trial court admitted Jarman's testimony without asking for or finding any exception to the hearsay rule, and no exception is apparent now. Likewise, Garraway's right to confront the witnesses whose statements Jarman testified to was ignored without any rationale being advanced, and again, no clear avenue to admissibility can be found now. Allowing Jarman's testimony on ownership was an abuse of discretion.

That abuse of discretion affected Garraway's substantial rights because there is no fair assurance the evidence did not influence (or barely influenced) the jury. *See* TEX. R. APP. P. 44.2 (b) (standards for non-constitutional errors); *Motilla*, 78 S.W.3d at 355 (improper admission of evidence non-constitutional error subject to harm analysis); *see also Brooks*, 323 S.W.3d at 897 (substantial rights

not affected if same evidence properly admitted from other source). Indeed, evidence of ownership for the overwhelming majority of the owners in this case did not come from any other source, meaning that Jarman's testimony was absolutely necessary to support an essential element of the offense. *See Motilla*, 78 S.W.3d at 359 (no or mimimal influence by inadmissible evidence where evidence not related to contested issue, not prejudicial, State did not emphasize it, and substantial additional evidence supported conviction). The appropriate course of action now is reversal and remand for a new trial. *Johnson*, 967 S.W.2d at 417.

## **Issue Six** Legal-sufficiency of the Evidence

## **The evidence was legally insufficient to convict Garraway of theft of property valued at $1,500 ≤ $20,000**

Legal-sufficiency is tested by deciding whether—viewing the evidence in the light most favorable to the verdict—any rational juror could have found each element of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 896 (applying standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979)). The "most favorable to the verdict" language means that sufficiency review must defer to the jury's determinations of weight and credibility and resolve any conflicting evidence in favor of the verdict. *Jackson*, 443 U.S. at 318–19; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 912. In essence, if there is *some* evidence of each essential element, the evidence is legally sufficient to support a conviction.

The relevant elements come from the "hypothetically correct jury charge"—one that

> accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability and adequately describes the particular offense for which the defendant was tried.

*Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997). Therefore, while Garraway contends that theft was not properly before the jury and in any event was not properly charged, the sufficiency of the evidence may still be challenged.

A hypothetically correct jury charge on aggregate theft in this case would have required the jury to find beyond a reasonable doubt that, pursuant to one scheme or continuing course of conduct, Garraway unlawfully appropriated property with the intent to deprive each named owner of the property without each named owner's effective consent, and that the value of the property stolen was $1,500 or more but less than $20,000. *See* TEX. PEN. CODE ANN. § 31.03 (a), (b), & (e)(4) (West 2011) (elements of state jail felony theft); *id.* § 31.09 (aggregation of amounts involved in theft); *Byrd*, 336 S.W.3d at 250–51 (theft involves taking specified property away from owner without owner's consent).

Missing here is any evidence whatsoever of the identity or lack of consent of the overwhelming majority of the owners or a property value falling within the state jail felony range.

While an owner's name is not an element of the offense, it generally stands in for ownership itself, an element that must be proven. *Byrd*, 336 S.W.3d at 251–

53 & n. 16. In *Byrd*, the State very thoroughly proved that the defendant had committed theft from Wal-Mart, which the Court of Criminal Appeals held insufficient to prove theft from a loss prevention officer named in the charging instrument and jury charge but not proven at trial. By failing to prove the identity of the owner, the State failed to prove an essential element of the offense. The same happened in Garraway's case: the State proved the identity of five of the eighteen owners listed in the jury charge. The remaining thirteen were mentioned during argument and the questioning of Kajileh and Jarman, but did not testify and were not connected with their specific property. As in *Byrd*, there was never any actual evidence offered to identify the owners.

Because most of the owners never testified, there was not any testimony establishing their lack of consent. At best, Kajileh testified that he had not "seen or heard" Garraway obtain permission, but he could not testify that the owners had denied him effective consent.

The value of the property is likewise murky. The only property for which there is evidence of value from the owner was the camera that belonged to Caitlyn Smith, which she said cost about $800. There is also evidence to infer that Amy Zuniga's saxophone was the same one Garraway sold for $350 (as documented by State's Exhibit 32) and that Andrew Davila's Xbox and controllers were the same ones pawned for a total (including other items) of $120 (as documented by State's Exhibit 33).

For the rest of the property, there is no evidence whatsoever connecting it to the owners listed in the indictment, and consequently, no evidence of the value of the property taken from those owners. There is mention by Kajileh that they pawned a number of items for "around $1,500" and similar testimony by Garraway, but that does not establish the value of the specific items taken or even establish their collective value, since there is no evidence that the property pawned is the same property listed in the jury charge on theft.

Finally, even if the pawn values were connected to the property listed in the theft charge, pawn value alone cannot establish value as a matter of law. Not only is it not a "sale"—a pawn being a loan on collateral—the standard is that when a non-owner testifies about value, "the non-owner must be qualified as to his knowledge of the value of the property and must give testimony explicitly as to the fair market value or replacement value of the property." *Sullivan v. State*, 701 S.W.2d 905, 909 (Tex. Crim. App. 1986); *accord Holz v. State*, 320 S.W.3d 344, 350 (Tex. Crim. App. 2010). The same logic would apply to statements by Kajileh, Jarman, and Garraway—non-owners—about general possible values of the property.

When the evidence is legally insufficient to convict under a hypothetically correct jury charge, a case must be remanded to the trial court for either acquittal or reformation. *Rabb v. State*, 434 S.W.3d 613, 618 (Tex. Crim. App. 2014). Reformation is only available when the jury necessarily found every element for a lesser-included offense and the evidence was sufficient for conviction of that

offense. *Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014). For example, in a property offense, if the only element for which there is insufficient evidence is value, reformation to the appropriate lesser grade of the offense for which there is sufficient evidence is the appropriate remedy. *Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012).

Here, there is probably sufficient evidence for conviction of class A misdemeanor theft of property valued at $500 or more but less than $1,500. However, the errors in the jury charge—omission of elements and no unanimity requirement—mean that the jury did not necessarily find every element of that lesser-included. Since we cannot know what they found based on the record, the only solution available is a judgment of acquittal.

# PRAYER

Garraway moves this court to reverse the judgment against him. If this court finds only that Garraway was egregiously harmed by charge error or that his substantial rights were affected by improperly admitted evidence, Garraway moves for remand to the trial court for a new trial on theft. However, Garraway urges this court to remand the case to the trial court for acquittal based on the legal insufficiency of the evidence.

RESPECTFULLY SUBMITTED,

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.        Austin, Texas 78701
*ph* (512) 921-8247    *fax* (512) 451-5882
*email* ellic@sahuallalaw.com

# CERTIFICATE OF COMPLIANCE

I certify that the parts of this document not excluded under TEX. R. APP. PROC. 9.4 (i)(1) contain a total of 9,281 words according to the word count of the computer program used to prepare the document.

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.          Austin, Texas 78701
*ph* (512) 921-8247     *fax* (512) 451-5882
*email* ellic@sahuallalaw.com

# CERTIFICATE OF SERVICE

I certify that on January 16, 2015, a true and correct copy of this document was served on the Honorable Wes Mau (whose address is 712 S. Stagecoach Trail, Ste. 2057, San Marcos, Texas 78666) through the electronic filing manager.

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.        Austin, Texas 78701
*ph* (512) 921-8247    *fax* (512) 451-5882
*email* ellic@sahuallalaw.com